166 N.J. Super. 368 (1979)
399 A.2d 1040
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
THEODORE LIST AND ROBERT MARRUCCA, DEFENDANTS.
Superior Court of New Jersey, Law Division (Criminal).
Decided February 26, 1979.
*370 Mr. Marc F. Stuart for defendant List.
Mr. Joseph Hillman for defendant Marrucca (Messrs. Hillman, Badach & Sullivan, attorneys).
Mr. Barth Aaron for the State (Mr. Alexander D. Lehrer, Prosecutor of Monmouth County, attorney).
SHEBELL, J.S.C.
Defendants seek to suppress as evidence against them certain controlled dangerous substances which they, together with the owner-operator of the vehicle, jointly owned and possessed. The owner-operator is a codefendant in the indictment; however, he has failed to move to suppress within the time permitted under R. 3:5-7(a). The moving defendants were or had been passengers in a van which was parked when local police officers on routine patrol decided to investigate its presence in the beachfront area of a shore community at 1:45 A.M. Two persons, one of whom *371 was defendant Marrucca, were noted to have been approaching the van as the police vehicle came into view; however, they turned and began walking away from the van. Both of these persons had been passengers in the van. The driver-owner of the van was behind the wheel and could be seen by the officers. There were two other persons in the van when the police arrived; one, defendant List and the second, a female juvenile, neither of whom was visible to the officers.
One of the investigating officers walked up to the side double doors on the van and without announcement or permission opened one of the doors and directed his flashlight inside upon the two passengers, at which time he observed beer inside the vehicle and learned the age of the girl. Because of this discovery the officers desired a further search of the vehicle. A search of the van then took place after consent was given by the owner of the vehicle. This search resulted in the finding of drugs unconcealed in the bed area of the van. The State concedes that the consent of the owner of the vehicle was not legally sufficient under State v. Johnson, 68 N.J. 349 (1975). Some 20 minutes after the search and seizure of the controlled dangerous substances defendant List was personally searched incidental to his arrest and a hunting knife was found which he also seeks to have suppressed.
This court has ruled in open court at the time of the hearing on the motion to suppress that there was no valid consent to the searching of the van and that there was no probable cause for the opening of the door of the van and the subsequent search. The court reserved decision on the question of whether the evidence observed and seized should be suppressed as evidence in the trial of the charges against the three moving defendants.
Prior to the decision of the United States Supreme Court in Rakas v. Illinois, ___ U.S. ___, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), this court would have somewhat matter-of-factly concluded that each of the three moving defendants had standing to obtain suppression of the evidence *372 in question. The "standing" terminology of Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), prior to its examination in Rakas, would have caused this court to conclude that defendants had "automatic" standing because the possession needed to establish standing is an essential element of the offense charged, and defendants appeared to have an arguable legitimate presence or right in the premises of the van as they had been passengers with the permission of the owner. The "legitimately on premises" doctrine of Jones, however, has been abandoned as a test in the application of the Fourth Amendment. It is relevant as it may bear on one's expectation of privacy, but it is no longer controlling. People v. Rakas, ___ U.S. ___, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978). Additionally, the Supreme Court in Rakas refused to accept a "target" theory of "standing." Just as significantly, Rakas makes it clear that the concept of "standing" is to be set aside in favor of a "substantive Fourth Amendment test" of legitimate expectation and right of privacy from unreasonable governmental intrusion. Id. 99 S.Ct. at 429. The court in Rakas stated that passengers in an automobile simply would not normally have a legitimate expectation of privacy in such areas as the glove compartment of an automobile or under the seat of a car. Id. at 433.
Defendants seek to distinguish the case at bar from the facts in Rakas by pointing out that there, the court specifically noted that defendants did not claim any possessory interest in the property seized, whereas defendants in this case allege joint ownership of the controlled dangerous substances. Id. at 433. The attempt to obtain a result contrary to the holding in Rakas by adding the element of a property or possessory interest in the goods seized simply runs counter to the true rationale and holding established with great pains by the court. Mr. Justice Powell and Chief Justice Burger in their concurring opinion in Rakas restated the majority view that

*373 The ultimate question, therefore, is whether one's claim to "privacy" from government intrusion is reasonable in light of the surrounding circumstances.
They went on to point out that
In considering the reasonableness of asserted privacy expectations, the court has recognized that no single factor invariably will be determinative. Thus, the Court has examined whether a person invoking the protection of the Fourth Amendment took normal precautions to maintain his privacy  that is, precautions customarily taken by those seeking privacy. [at 435]
Justices Powell and Burger then noted that one's expectation of privacy in an automobile is significantly different from the traditional expectations of privacy and freedom in a residence.
The facts as they might have been in the case at bar if the officers had obtained a valid consent from the owner-operator of the vehicle very brightly demonstrate the point that the aforementioned Justices were focusing on  that is, the passengers could not have any expectation of privacy in the vehicle in question as to the area where the drugs were found, for they had no voice in whether or not a search could be conducted and they had made no special provision to insure the privacy of the property in question. The search of the vehicle under the circumstances being with the permission (even if not a valid "Johnson consent") of the owner, did not violate defendant-passengers Fourth Amendment expectations of privacy under the United States Constitution.
Defendants also seek suppression under N.J. Const. (1947) Art. 1, par. 7. The language of that section is taken almost verbatim from the Fourth Amendment of the Federal Constitution, but nonetheless it was recognized in State v. Johnson, 68 N.J. 349, 353 (1975), that we have the right to construe our constitutional provision as affording greater protection than that provided by the Fourth Amendment. There is, however, neither mandate nor reasoning in Johnson which would cause this court to expand the *374 availability of the exclusionary rule of suppression to persons who might not otherwise be entitled to its protection under the Fourth Amendment. Our Supreme Court did not, in Johnson, enunciate any public policy which would in effect authorize this court to differ from the holding of the majority in Rakas.
The language of R. 3:5-7 makes reference to
* * * a person claiming to be aggrieved by an unlawful search and seizure and having reasonable grounds to believe that the evidence seized may be used against him in a penal proceeding.
This rule, however, cannot be interpreted as conferring any substantive rights, for it is merely a procedural rule and the quoted language was only intended as a means of reference to establish a class of persons who might be attempting to avail themselves of the procedure established by the court.
The search of the van did not violate defendants' rights and the fruits of that search were not unlawfully seized. The arrest of List being the consequence of a valid search and the search of his person incidental to that arrest, the seizure of the knife was not unlawful.
Defendants' motions to suppress are denied.